IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01998-KAS

COLORADO STATE SHOOTING ASSOCIATION, et al.,

    Plaintiffs,

v.

JARED POLIS, Colorado Governor, in his official capacity,

    Defendant.

## DEFENDANT'S RULE 56(d) MOTION TO DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO ALLOW DEFENDANT TO CONDUCT DISCOVERY

In this lawsuit challenging two of Colorado's gun safety laws, Plaintiffs have moved for summary judgment before discovery has opened and before the Governor has even answered the allegations in the complaint. Such premature motions for summary judgment are disfavored. Here, the Governor intends to obtain discovery concerning, among other things, Plaintiffs' standing to maintain this lawsuit and to obtain historical evidence of the type required by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Governor should be permitted to conduct this discovery to provide a full defense of Colorado's laws. Accordingly, the Governor respectfully requests the Court deny Plaintiffs' motion for summary judgment under Fed. R. Civ. P. 56(d).

## CERTIFICATE OF CONFERRAL

Counsel for the Governor conferred with Plaintiffs' counsel regarding the relief sought in this motion. Plaintiffs oppose the motion.

## BACKGROUND

Plaintiffs challenge two laws in this lawsuit: (1) HB 23-1219, creating a three-day waiting period before a firearms seller may transfer a firearm to a purchaser, which will go into effect on October 1, 2023; and (2) SB 23-169, establishing a minimum age of 21 for most firearms sales in the state. SB 23-169 is currently preliminarily enjoined. *See Mosgrove v. Polis*, No. 23-cv-01077-PAB, 2023 WL 5017253 (D. Colo. Aug. 7, 2023).

Plaintiffs filed their lawsuit on August 7, 2023. Defendant, Governor Jared Polis, in his official capacity, waived service the next day, making his answer or other responsive pleading due on October 9. On August 29, nearly six weeks before the Governor's answer deadline, Plaintiffs moved for summary judgment.

## LEGAL STANDARD

Plaintiffs' motion for summary judgment, filed before discovery and even before the answer deadline, is disfavored. "[P]re-discovery summary judgment remains the exception rather than the rule, and will be granted only in the clearest of cases." *Patton v. General Signal Corp.*, 984 F. Supp. 666, 670 (W.D.N.Y. 1997) (quotations omitted); *see also Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full

opportunity to conduct discovery.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *Lone Star Promotions, LLC v. Abbey Lane Quilts, LLC*, No. 1:18-CV73DAK, 2019 WL 2552241, at *1 (D. Utah June 20, 2019) ("Pre-discovery motions for summary judgment are rarely granted and are disfavored.").

By contrast, the Governor's Rule 56(d) motion to allow more discovery is liberally treated. "A Rule 56[(d)] motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino*, 684 F.3d at 99 (quotations omitted); *see also JL v. New Mexico Dep't of Health*, 131 F. Supp. 3d 1248, 1251 (D.N.M. 2015) ("'Unless dilatory or lacking in merit,' a party's 56(d) application '"should be liberally treated."') (quoting *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1553–54 (10th Cir. 1993)); 10B Charles Alan Wright et al., *Fed. Practice & Procedure* § 2740 (4th ed.) ("[C]ourts have stated that the provision should be applied with a spirit of liberality.").

Under Rule 56(d),

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In the Tenth Circuit, the Rule 56(d) declaration must specify "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how

3

additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (quotations omitted).

## ARGUMENT

The Governor attaches to this motion a declaration from counsel, as required by Rule 56(d), detailing facts that the Governor intends to elicit during discovery that will have a direct bearing on Plaintiffs' motion for summary judgment. *See* Ex. 1 (Sullivan Dec.). Below, the motion summarizes how this declaration satisfies the Tenth Circuit's standard for granting a Rule 56(d) motion.

### A.   The declaration identifies probable facts not currently available.

#### 1.   Facts relating to Plaintiffs' standing.

Plaintiffs bear the burden of proving their standing. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). Defendants have not yet been able to discover facts about Plaintiffs' standing. Plaintiff Colorado State Shooting Association (CSSA), for example, asserts that it is bringing "this lawsuit on behalf of its abuse survivor members." Compl. (Doc. 1) ¶ 18. The Governor has not yet discovered whether those individuals are 18-20 years old and thus affected by SB23-169 at all. Nor has the Governor learned the nature of the injury they assert with respect to HB 23-1219—for example, do the individuals already own firearms? Did they purchase or attempt to purchase any firearms before October 1, 2023, when the law will go into effect? *See* Ex. 1 ¶ 5. CSSA attached a declaration from its

4

executive director and fellow plaintiff, Daniel Fenlason, to its motion for summary judgment. (Doc. 7-1.) But the five-sentence declaration does not establish that any of CSSA's members are 18-20 years old or that any members currently do not possess firearms and would be adversely affected by a three-day waiting period that has not yet gone into effect. Similarly, the other declaration attached to the summary judgment motion, by Plaintiff Trevor Alley, does not state whether Alley currently has access to firearms for the purpose of self-defense. (Doc. 7-2). These facts are relevant to Plaintiffs' Article III standing. *See* Ex. 1 ¶¶ 4-5.

Plaintiffs state in their summary judgment motion that Plaintiffs have submitted written declarations swearing to the truth of certain matters. Doc. 7 at 2. But the declarations are conclusory, consisting of just a few sentences. The Governor is entitled to conduct discovery, including subjecting Plaintiffs to cross-examination in a deposition, to understand the factual bases for their self-serving assertions. Plaintiffs' statement that "Defendants are unable to dispute the composition of CSSA's membership, the existence of these domestic violence survivors, and the reality that any of the seven may . . . be placed in imminent danger," *id.* at 4, is precisely the point—the Governor has not yet had an ability to challenge Plaintiffs' bare assertions.

These standing concerns are not abstract, as two recent cases show. In *Rocky Mountain Gun Owners v. Polis*, the Court denied plaintiffs' request to preliminarily enjoin HB 23-1219 because neither the organizational plaintiff nor the individual

5

plaintiff came forward with evidence establishing their standing to bring a pre-enforcement challenge to the law. No. 23-cv-01076-PAB-NRN, 2023 WL 5017257 (D. Colo. Aug. 7, 2023). The organizational plaintiff's standing was also deficient because it failed to "identify members who have suffered the requisite harm." *Id.* at *3 (quotations omitted). The plaintiffs subsequently voluntarily dismissed that case. The court also denied organizational standing to bring a preliminary injunction in a case challenging SB 23-129. *Mosgrove*, 2023 WL 5017253, at *5. Plaintiffs here face the same potential issues, as they also consist of an organizational plaintiff challenging both state laws and individuals who are bringing a pre-enforcement challenge to HB 23-1219. The Governor thus needs time to explore the factual bases for Plaintiffs' standing. *See* Ex. 1 ¶ 6.

### 2. **Expert discovery.**

Under the standard recently articulated by the Supreme Court, courts must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S. Ct. at 2129-30. If it does, the government has the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. The courts do not conduct this historical inquiry "in the abstract." *Id.* at 2130 n.6. Instead, courts must rely on "various evidentiary principles," including "the principle of party presentation." *Id.* (quotations omitted). "Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Id.*

6

Following this directive from the Supreme Court, district courts have relied on robust records before ruling on the merits of post-*Bruen* Second Amendment challenges. For example, a federal judge in Oregon conducted a weeklong bench trial in a challenge to Oregon's ban on large-capacity magazines, involving twenty witnesses—including five historical experts from Defendants, among other experts—and more than 100 exhibits. *Or. Firearms Fed. v. Kotek Or. All. For Gun Safety*, --- F. Supp. 3d ---, 2023 WL 4541027, at *3, 15 (D. Or. July 14, 2023). In this district, the parties recently filed cross-motions for summary judgment on plaintiffs' challenge to Colorado's ban on large-capacity magazines, with the Governor filing 27 exhibits gathered over a nearly yearlong discovery process. *See Gates v. Polis*, No. 22-cv-1866-GPG-SKC (D. Colo.) (Doc. No. 74). These cases show that the historical inquiry *Bruen* demands is a fact-intensive one that requires substantial expert testimony. The Governor is unaware of any post-*Bruen* case, and Plaintiffs cite none, where the court entered final judgment against the government before it answered and had the opportunity to retain experts and build the record contemplated by *Bruen*.

The Governor is currently exploring possible experts for this and related cases. *See* Ex. 1 ¶¶ 7-8. In the *Mosgrove* case, for instance, the Governor attached four declarations from historical and psychological experts to his response to the motion for preliminary injunction. *See* No. 23-cv-1077 (Doc. Nos. 28-1 to 28-4). These declarations showed, among other things, that persons under 21 were

7

considered minors at the Founding who did not enjoy rights under the Second Amendment; that Founding- and Reconstruction-era laws restricted minors' ability to use and possess firearms; and that 18-to-20-year-olds' brains are not fully developed, making them more likely to engage in impulsive and risky behavior with firearms. *See* Ex. 1 ¶¶ 9-10. The Governor anticipates developing similar evidence more fully in this case. Once fully developed, it will show that SB 23-169 is fully consistent with the Second Amendment.

Similarly, in *Rocky Mountain Gun Owners*, No. 23-cv-1076, the Governor defended Colorado's three-day waiting-period law by eliciting expert testimony from a historian who explained that firearms in the Founding era were poorly suited for committing crimes of passion—the main target of modern waiting period laws. Such firearms were generally muzzle-loading, required a great deal of labor to load, often misfired, and could only shoot one shot without reloading. *See id.* at ¶ 11. Later, "unprecedented societal concerns" over rising firearm violence and "dramatic technological changes" in firearms prompted the States to adopt waiting period laws. *Bruen*, 142 S. Ct. at 2132. The Constitution permits States to enact such laws because the Founders "intended [it] to endure for ages to come, and consequently, to be adapted to the various crises of human affairs." *Id.* (quotations omitted).

The declarations in *Mosgrove* and *Rocky Mountain Gun Owners* were compiled in an expedited manner to respond to the preliminary injunction motions. The Governor intends to more thoroughly review possible experts on laws in the

8

colonial period, at the time of the Founding, in the early 19th century, during Reconstruction, and in the early 20th century to better explain to the Court the historic lineage of the laws at issue, as *Bruen* contemplates. Ex. 1 ¶ 12.

Additionally, Plaintiffs argue that domestic violence victims will be harmed by Colorado's waiting period law. *See, e.g.*, Doc. 7 at 3-4. The Governor intends to seek discovery as to this claim to understand the nature of the harm alleged by Plaintiffs, and to evaluate—possibly through expert testimony—whether domestic violence victims are harmed by a law imposing a three-day waiting period before their abusers can obtain a firearm. Ex. 1 ¶ 13.

**B.    The declaration explains why those facts cannot be presented currently.**

The above facts can be obtained from Plaintiffs through written discovery and depositions or from the Governor's procurement of experts. At this early stage—before the Governor has even answered—the Governor has not yet had an opportunity to conduct such fact or expert discovery in this case. *Id.* at ¶ 14.

**C.    The declaration explains what steps have been taken to obtain these facts.**

No steps have been taken yet to take discovery from Plaintiffs because discovery is not available at this early stage. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]"). Given the very early stage of the case, this is clearly not evidence of a "dilatory" motive. *See Jensen*, 998 F.2d at 1554. The Governor has

9

taken steps to procure expert discovery in other Second Amendment cases which will likely be able to be used in this case. But those other cases have also not yet even had a scheduling conference, so expert discovery remains ongoing there as well. Ex. 1 ¶ 15.

### D. The declaration describes how additional time will enable the Governor to obtain those facts and rebut the motion for summary judgment.

Additional time will allow the Governor to serve requests for admission, interrogatories, and requests for production, and to take depositions, to evaluate Plaintiffs' standing to challenge either or both of HB 23-1219 and SB 23-169. It will also allow the Governor to procure expert witnesses to adduce the historical evidence required by *Bruen*. Ex. 1 ¶ 16.

### CONCLUSION

Under Rule 56(d)(1), the Court can "defer considering the motion or deny it." Given the very preliminary nature of this case, the Governor respectfully requests the Court grant this Rule 56(d) motion and deny Plaintiffs' motion for summary judgment without prejudice to refiling it after the parties have engaged in discovery.

Respectfully submitted this 14th day of September, 2023,

        PHILIP J. WEISER
        Attorney General

        */s/ Michael T. Kotlarczyk*
        MICHAEL T. KOTLARCZYK, Senior Assistant Attorney General*
        GRANT T. SULLIVAN, Assistant Solicitor General*
        Public Officials Unit | State Services Section
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 6th Floor
        Denver, CO 80203
        Telephone: 720.508.6187
        mike.kotlarczyk@coag.gov, grant.sullivan@coag.gov

        *Attorney for Defendant Jared Polis, Colorado Governor, in his official capacity*
        *Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I served a true and complete copy of the foregoing **DEFENDANT'S RULE 56(d) MOTION TO DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO ALLOW DEFENDANT TO CONDUCT DISCOVERY,** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Kristine L. Brown
8700 E Jefferson Ave #370953
Denver, CO 80237
kristiburtonbrown@gmail.com

*Attorney for Plaintiffs*

*/s/ Carmen Van Pelt*