IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-1998-KAS

COLORADO STATE SHOOTING
ASSOCIATION, TREVOR ALLEY, and
DANIEL FENLASON

    Plaintiffs

v.

JARED POLIS, Colorado Governor, in his
official capacity

    Defendant.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S RULE 56(d) MOTION AND MOTION TO STAY BRIEFING ON SUMMARY JUDGMENT**

While the Governor is correct that motions for summary judgment prior to discovery are typically disfavored, they are granted in cases where the facts are clear and only questions of law are presented. Here, as Plaintiffs will demonstrate below, further discovery would not be fruitful as this is a case based on questions of law, not material facts at issue.

SB23-169 and HB23-1219 should be disposed of as efficiently as justice will allow. SB23-169 is unconstitutional on its face through a pure *Bruen* analysis, and historical records have been extensively developed and evaluated by federal courts. HB23-1219 is unconstitutional and possesses a fatal flaw: failing to provide exceptions for those in need of firearms to defend

themselves – a conclusion that can also be reached by a pure *Bruen* analysis. The history the Governor claims to want to develop on HB23-1219 is not on point. While the Governor may disagree with *Bruen* and the questions of law here, discovery is not reasonably likely to raise a genuine issue of material fact. Therefore, Plaintiffs submit that both of the Governor's motions should be denied in the interest of the efficiency of justice and Plaintiffs' Motion for Summary Judgment should be briefed by the Governor.

**The Governor Obfuscates and Raises Mere Metaphysical Doubt on Material Facts**

When a party raises its opposition to a Motion for Summary Judgment, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The Governor obfuscates in his Motion, raising the issue of the age of CSSA's members who are survivors of domestic violence. Mot. to Deny (Doc. 11) p. 4. This is a puzzling objection by the Governor, as age is not an issue for the three-day waiting period law, and it is that law which CSSA challenges on behalf of these specific members.

Instead, age is only an issue on Plaintiff Mr. Alley's challenge to SB23-169, and the Governor does not validly dispute Mr. Alley's sworn declaration that he is under the age of 21 and over the age of 18. This is a material fact not in dispute.

Additionally, the Governor contends that he "intends to seek discovery…to evaluate…whether domestic violence victims are harmed by a law imposing a three-day waiting period before their abusers can obtain a firearm." Mot. to Deny (Doc. 11) p. 12. This is an interesting area of discovery the Governor wishes to conduct, but it does not relate to Plaintiffs' actual facts. Plaintiffs have cited the lack of an exception for *domestic violence survivors to*

*defend themselves*, not a waiting period specifically targeted to abusers. If that is what the Governor intended to sign into law, perhaps he should have read HB23-1219 more carefully.

Neither does the Governor address the clear, material fact asserted in Plaintiffs' Complaint – that HB23-1219 discriminates against some at-risk persons because it grants an exception to family members of military persons but not to all persons at risk of violence. Comp. ¶ 49-52. The Governor did not address or dispute the material fact that HB23-1219 is imposed on any person who has passed a clean background check, and thus, it is not in keeping with the historical traditions of the Second Amendment. Instead, the Governor cited his desire to bring expert testimony that Founding era guns were difficult to reload and were "poorly suited for committing crimes of passion" – hardly the history on point when Plaintiffs have raised the need to strike down HB23-1219 for domestic violence survivors who wish to *defend* themselves, not commit crimes of passion. Mot. to Deny, Doc. 11, p. 9. The historical traditions the Governor raises stray very far from the facts Plaintiffs has raised here against HB23-1219, and Plaintiffs assert it is because he cannot dispute them. His obfuscation is not on point.

**The Governor May Not Use Discovery as a Fishing Expedition to Delay Justice**

The Governor makes it clear that he wishes to discover precisely how many – if any – guns each Plaintiff and member of CSSA who has survived domestic violence owns. Mot. to Deny, Doc. 11, p. 4. Presumably, the Governor has a specific number of guns that he plans to argue are sufficient to defend oneself. However, the Governor may not use this case as a fishing expedition to require citizens to inform him of the number of firearms they own and exactly where they keep and use these firearms. The Second Amendment does not concern itself with

limiting the number of guns a citizen needs for self-defense or must possess to be considered "un-injured."

And indeed, what right does the Governor have to question a domestic violence survivor on whether she currently owns a pistol that she keeps securely locked in her car so that she could escape safely at a moment's notice, but also has the intention to purchase a second handgun, as soon as she has the funds to do so, to keep in her house to defend herself there? It is unfortunate that the Governor plans to depose domestic violence survivors who CSSA has asserted need to remain anonymous for their own health and safety. Such survivors are plentiful throughout the state and as members of firearms organizations, and CSSA has submitted a sworn declaration that it has identified these members specifically – one of the requirements to meet organizational standing.

There are so many domestic violence survivors across the state that they could fit within the standard of "capable of repetition yet evading review,"[1] even if the Governor wants to pick away at the seven identified survivors who belong to CSSA. Few domestic violence survivors will be willing to subject themselves to depositions by the government – understandably so – and

---

[1] *See, e.g., Kingdomware Techs., Inc. v. United States,* 136 S. Ct. 1969, 1976 (2016); *Turner v. Rogers*, 564 U.S. 431, 439–41 (2011); *Davis v. FEC*, 554 U.S. 724, 735–36 (2008); *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *Norman v. Reed*, 502 U.S. 279, 287–88 (1992); *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991); *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988); *Honig v. Doe*, 484 U.S. 305, 317–23 (1988); *Burlington N. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 436 n.4 (1987); *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 257–58 (1987); *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 577–78 (1987); *Press-Enter. Co. v. Super. Ct. of Cal. for Cty. of Riverside*, 478 U.S. 1, 6 (1986); *Globe Newspaper Co. v. Super. Ct. for Cty. of Norfolk*, 457 U.S. 596, 603 (1982); *Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979); *Bell v. Wolfish*, 441 U.S. 520, 526 n.5 (1979); *First Nat'l Bank of Bos. v. Bellotti,* 435 U.S. 765, 774 (1978); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 165 n.6 (1977); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546–47 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125–27 (1974); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972); *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–16 (1911).

the government should not chill justice by seeking to dissuade survivors from seeking justice and the ability to defend themselves in this way.

### The Governor Confuses the *Rocky Mt. Gun Owners* Case With This Case

The Governor raises *Rocky Mt. Gun Owners v. Polis,* 2023 U.S. Dist. LEXIS 137087 (D. Colo. Aug. 7, 2023), (which he refers to as *Mosgrove v. Polis*, No. 23-cv-01077-PAB, 2023 WL 5017253 (D. Colo. Aug. 7, 2023)) multiple times throughout his Motion. Notably, the Governor attempts to state that CSSA has the same issues with organizational standing that RMGO had. Mot. to Deny (Doc. 11) p. 6. However, in the ruling for preliminary injunction, Chief Judge Brimmer made it clear that RMGO had not even attempted to assert facts for organizational standing. *Rocky Mt. Gun Owners* at *13. Here, CSSA has asserted the facts that SB23-169 interferes with the essential work of the organization and that it stands in the place of identified members who have their own standing for HB23-1219 in their own right (*see Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)) but need to remain anonymous for their health and safety. RMGO raised no similar facts.

Furthermore, recent cases dealing with the rights of 18-20-year-olds to purchase or carry arms have recognized organizational standing for organizations like CSSA. In *Worth v. Harrington*, 2023 U.S. Dist. LEXIS 56638 (D. Minn. March 21, 2023), the Court wrote: "The Court has no trouble concluding that Plaintiffs have met their burden to show that they have standing. Courts addressing nearly identical claims on very similar records have found the requisite criteria are satisfied for Article III standing. *See McCraw*, 2022 WL 3656996, at *2 (finding that individual and organizational plaintiffs had standing to challenge 21-year-old age restriction in Texas' permit-to-carry law on similar facts)." *Worth* at *48.

The Governor almost entirely ignores the fact that Plaintiffs here also consist of two individual plaintiffs – Mr. Alley for SB23-169 and Mr. Fenlason for HB23-1219 – who have submitted sworn declarations as to their own individual standing, including Mr. Alley's age, and the intention of both Plaintiffs to purchase firearms. There is no discovery the Governor can conduct that will find a different answer to either Plaintiff's legal age or intention.

The Governor challenges no material facts related to Mr. Alley's or Mr. Fenlason's standing, questioning only whether they currently own any firearms or why they cannot buy them today. The current ownership of firearms or the presence – or lack – of funds to buy them today instead of after October 1, 2023, are neither a) relevant to SB23-169 nor b) material to HB23-1219. The right to bear arms, articulated clearly in the Second Amendment, is not based on how many firearms one may already own. Instead, the right to bear them – to purchase, own, and use them – is within "the Second Amendment's plain text" that "covers an individual's conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129-30 (2022).

Thus, the Governor asserts no real dispute over the material facts regarding standing.

### The Governor Confuses Law with Facts

Besides the facts that the Governor obfuscates, confuses with the *Rocky Mt. Gun Owners* case, or makes a hypothetical objection to (without any real dispute), he also claims that the history of firearms is a material fact he must uncover before Plaintiffs' Motion for Summary Judgment may be considered. First, Plaintiffs contend that whether the historical record of firearms regulation is sufficiently on their side is a legal question, not a question of fact.

Summary judgment prior to discovery, while generally disfavored, is appropriate for the resolution of issues that are purely legal. Here, the Colorado laws are unambiguous, and it is a

matter of law, not fact, whether they meet the standard of the Second Amendment and *Bruen*. Naturally, there is some confusion as to what constitutes an issue of fact vs. an issue of law. The *Pullman* Court wrote: "The Court has previously noted the vexing nature of the distinction between questions of fact and questions of law. … Nor do we yet know of any … rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Pullman-Standard Co. v. Swint*, 456 U.S. 273, 288 (1982). Plaintiffs here submit that the history of firearms and its relation to the Second Amendment standard in *Bruen* is an issue of law. If this Court needs further legal information in this regard, it could order both parties to submit a legal memo on the topic. However, discovery is not necessary.

Second, Plaintiffs contend that whether the historical record on age-limit laws is a question of fact or law, it has already been reviewed by federal courts, including this one. "Based on the Second Amendment's text, as informed by Founding-Era history and tradition, the Court concludes that the Second Amendment protects against this prohibition. Texas's statutory scheme must therefore be enjoined to the extent that law-abiding 18-to-20-year-olds are prohibited from applying for a license to carry a handgun." *Firearms Policy Coal., Inc. v. McCraw*, 623 F. Supp. 3d 740, 745 (N.D. Tex. 2022). In *Beeler v. Long*, E.D. TN case no. 3:21-cv-00152 (March 20, 2023), the State of Tennessee – which had a very similar law to SB23-169 prior to *Bruen* – settled the case, agreeing with Plaintiffs that the law was unconstitutional under the Second and Fourteenth Amendments, based on the *Bruen* standard.

*Worth v. Harrington* is directly on point, and here, the District Court granted the Plaintiffs' Motion for Summary Judgment as against the law itself. The Minnesota law in question banned 18-20 year olds from applying for a permit to publicly carry a handgun, and the Court wrote that the law: "violates the rights of individuals 18-20 years old to keep and bear

arms protected by the Second and Fourteenth Amendments." *Id.* at \*56. This law was even less stringent than Colorado's SB23-169, as in Minnesota, 18-20 year-olds were still allowed to purchase the firearm. In its analysis, the Court discussed the historical record and ruled that "Defendants have not met their burden under the historical prong of *Bruen*'s test." *Id.* at \*45.

### Fifty Experts Will Not Help the Governor Any More Than One

Neither the states of Texas (*Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 748 (N.D. Tex. Aug. 25, 2022)) and Minnesota (*Worth v. Harrington*) nor the Governor's expert in *Rocky Mt. Gun Owners* could establish enough of an historical record to meet the historical prong of *Bruen*. The Governor thinks he will receive more help if he simply finds more experts, but the record has already been developed on the history of age limit bans and fifty experts could not help him overcome this.

In the preliminary injunction order in *Rocky Mt. Gun Owners*, Chief Judge Brimmer found: "Colonial laws that disarmed persons who presented a risk of danger to the state or to the country are not analogous to a categorical ban on a segment of society that has not professed hostility to the state or to the nation. And any such analogy would be 'far too broad.'" *Rocky Mt. Gun Owners* at \*39. After evaluating the history the Governor cited (apparently from his expert), Judge Brimmer found that Mr. Mosgrove was likely to succeed on the merits regarding whether the Second Amendment applies to all persons ages 18 and older, that the proposed conduct (the same conduct Plaintiffs here are engaged in) is covered by the plain text of the Second Amendment, and that the Governor could not show any historically analogous restrictions on 18-20-year-olds purchasing firearms or that SB23-169 was at all consistent with the Nation's historical tradition of firearm regulation. The Governor appealed the preliminary injunction, but

the Tenth Circuit agreed that he had not demonstrated the likelihood that he would succeed on the merits and denied his appeal. Again, while the Governor may think that he can fish out a particular expert that will stumble upon a Founding Era law that will back his position, this is highly unlikely given that the Governor already presented enough history in *Rocky Mt. Gun Owners* for Chief Judge Brimmer to engage in over twelve pages of historical analysis in his preliminary injunction order, combined with the fact that Texas and Minnesota federal courts have already evaluated the historical records on age limit laws and found them wanting.

### The Efficiency of Justice is at Issue

The Governor has not raised any facts essential to justify his need for discovery. Indeed, even the expert witness he cites from *Rocky Mt. Gun Owners* had the particular version of history rejected by this Court in its preliminary injunction order. Further discovery and additional historians are unlikely to produce any different facts. How many historians and experts does the Governor need? It would be against the interests of efficient justice to allow him to fish longer. The Governor has no need to rebuild the historical record already ruled insufficient in *McCraw* and *Worth*.

Summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted). It would indeed by merciful to the Governor and to Plaintiffs alike for this case to end now, with the Motion for Summary Judgment. The Governor has not presented evidence that discovery would enable him to find what the states of Texas, Minnesota, and Colorado – to this point – have not been able to locate. There simply is not

adequate historical tradition to support laws infringing on the rights of 18-20-year-olds to keep and bear arms. Just because the Governor wants additional experts does not mean that justice insists he get them. The Governor has not shown how any additional historical facts he, Texas, and Minnesota have not yet uncovered are reasonably expected to create a genuine issue of material fact.

He must also establish that such facts are reasonably likely to create a genuine issue. *See, e.g., Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co*., 840 F.2d 985, 988 (lst Cir. 1988). For the purposes of historical traditions on firearms, he has not done so for either SB23-169 or HB23-1219. He has merely suggested that there *may* possibly be some expert yet uncovered who would support his theory of history, though the courts that have so far considered extensive historical records on the issue of age limit bans have disagreed. He has also proposed which historical focuses he would like to have for HB23-1219, and he is far off point, as discussed *supra*, indicating that there are no legitimate historical traditions he intends to uncover.

Because "[s]ummary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact." FED. R. Civ. P. 56, advisory committee's note to original rule.," and [t]he purpose of summary judgment is to prevent the wasting of judicial resources on useless trials." John F. Lapham, *Summary Judgment Before the Completion of Discovery: A Proposed Revision of Federal Rule of Civil Procedure 56(f)*, 24 U. MICH. J. L. REFORM 253, 259 (1990), and, further, "[t]he general purpose of the Federal Rules, to afford every action a 'just, speedy, and inexpensive determination.'" *Id.* at 260; *see also* 31. FED. R. Civ. P. 1, Plaintiffs submit that the interests of justice and judicial efficiency lead to the denial of the Governor's motions – both the motion to deny Plaintiff's motion for summary

judgment until after discovery and to stay the Governor's answer on summary judgment until the motion to deny is ruled on.

## CONCLUSION

Because the facts are sufficient to establish Plaintiffs' claims and there is no genuine dispute as to any material fact, Plaintiffs respectfully request the Court deny the Governor's Rule 56(d) Motion and his Motion to Stay and consider instead Plaintiffs' Motion for Summary Judgment so that the efficiency of justice may be pursued and needless protracted litigation may be avoided.

Respectfully submitted on this 20th day of September, 2023.

/s/ Kristine L. Brown
*Kristine L. Brown*
8700 E. Jefferson Ave. #370953
Denver, CO 80237
Telephone: 720-285-9552
E-mail: kristiburtonbrown@gmail.com

*Attorney for Plaintiffs*