IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-1998-DDD-KAS

COLORADO STATE SHOOTING
ASSOCIATION, TREVOR ALLEY, and
DANIEL FENLASON

    Plaintiffs

v.

JARED POLIS, Colorado Governor, in his
official capacity

    Defendant.

## PLAINTIFFS' SHOWING OF CAUSE

Plaintiffs Colorado State Shooting Association ("CSSA"), Trevor Alley ("Mr. Alley"), and Daniel Fenlason ("Mr. Fenlason") hereby answer this Court's order for a showing of good cause regarding why this case should not be stayed pending disposition of *Rocky Mountain II* and *Rocky Mountain III*.

Plaintiffs agree with this Court that the standard on stays to conserve judicial resources is stated in *Michels v. U.S. Dep't of Just.*, No. 21-cv-01737-WJM-NRN, 2021 WL 8153753, at *2 (D. Colo. Nov. 30, 2021): "In general, 'a suit is duplicative if the claims, parties, and available relief do not *significantly* differ between the two actions.'" However, Plaintiffs believe that while most of the claims and available relief are similar in this case and the *Rocky Mountain* cases, the

parties and the injury differs in such a way that there should not be a stay. If the Court wishes to stay one of the cases, Plaintiffs respectfully submit that the stay should be placed on the *Rocky Mountain* cases because the parties and injury are more significant here and because this case consolidates both laws, whereas *Rocky Mountain II* and *Rocky Mountain III* require the Court to consider them separately. Judicial resources would be best served to hear a suit against both laws simultaneously, especially since the same relief is requested on both laws in Plaintiffs' case.

I. **CSSA has more solid standing than the organizational plaintiff in *Rocky Mountain II*.**

While it is accurate that *Rocky Mountain II* was filed first, and a preliminary injunction has been entered, the preliminary injunction called into question the standing of a major plaintiff in that case – Rocky Mountain Gun Owners – stating that RMGO did not have standing for purposes of the preliminary injunction. Indeed, the Court found that RMGO had not even attempted to argue organizational standing: "RMGO does not provide grounds for its own standing." *RMGO v. Polis*, Case No. 1:23-cv-01077-PAB, Docket No. 37 at 10. Here, Colorado State Shooting Association has made an explicit claim of organizational standing and explained the injury to CSSA as an organization and on behalf of its members. Docket No. 1 at ¶¶ 16-18.

CSSA has been acting on behalf of its members in Colorado since 1926. Unlike individual plaintiffs whose situations may change unexpectedly or even outside of their control, long-established organizations rarely change their circumstances and can be more solid plaintiffs in a drawn-out case, particularly when they are representing their members, as is the case here.

## II. CSSA was first in time on the waiting period law, as a valid pre-enforcement plaintiff.

Furthermore, while this Court's Order to Show Cause stated that *Rocky Mountain III* had completed a preliminary injunction briefing and had a hearing scheduled for the day of the order, that injunction has subsequently been denied, rendering that case in nearly the same spot as this present one, other than the filing dates.

Although this Court stated that *Rocky Mountain III*'s later filing date "obviates a standing hurdle that may bar the plaintiffs' waiting period claims in this case," Plaintiffs here would contend that they had standing to file earlier (as they did) due to the nature of the injury they asserted. As an organization, CSSA filed on behalf of identified, specific members who are survivors of domestic violence, and who suffered an injury as soon as the waiting period law was signed by the Governor. CSSA has other members who are also represented in this suit with their own unique injuries based on the waiting period law. For example, one member is the president of a gun show that has suffered at least a twenty percent reduction in attendance because of the burden this law places on law-abiding citizens. Such injuries begin to occur as soon as a law is signed.

Domestic violence survivors, specifically, had a compelling interest to file this suit preemptively as soon as the law was signed. Due to the nature of being a survivor, these members live in constant imminent danger as long as their attacker is alive. And while there was a limited period of time after the law was signed – but was not in effect – in which some survivors may have been able to purchase a firearm without a waiting period, not all survivors had saved the funds to do so. At the time some member survivors needed or were able to purchase a firearm, they knew the law would be in effect – and it is currently in effect.

Therefore, CSSA preemptively filed this lawsuit so that no domestic violence survivor member would encounter a gap in the protection of the law. For survivors of violence, a three-day-waiting period to exercise self-defense can be fatal.

While pre-enforcement challenges often involve the threat of prosecution by the government, they must not always. For example, in *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923), the U.S. Supreme Court ruled that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." A domestic violence survivor is always living in a state of being a few moments away from needing a firearm to defend herself or himself. A law that requires her or him to wait three days to obtain a firearm she or he otherwise fully qualifies for is an impending injury that could result in death. *Virginia v. American Booksellers Association*, 484 U.S. 383, 384 (1988) also did not require a threat of prosecution for a pre-enforcement challenge. Instead, the Court said, "[T]he alleged danger of this statute is, in large measure…a harm that can be realized even without an actual prosecution." Plaintiffs here are qualified to bring a pre-enforcement challenge and because they were first in time to file – before *Rocky Mountain III* – their suit ought not to be the one that is stayed.

Additionally, while *Rocky Mountain III* has an individual plaintiff who desires to exercise Second Amendment rights, this case has Plaintiffs with more significant injuries and risks if the law is upheld, and, as a membership organization representing these survivors, CSSA filed first – and preemptively – to guard their constitutional rights. If any case should be stayed, Plaintiffs believe it ought to be *Rocky Mountain III*.

### III. CSSA has consolidated both anti-Second Amendment laws into one case.

It serves the interest of preserving judicial time and resources to hear Plaintiffs'

consolidated case where both the age-limit and waiting-period laws are challenged at once, by the same organizational plaintiff. Because Plaintiffs have challenged both laws in one action, this case will result in a more efficient use of judicial time than for this Court to separately consider *Rocky Mountain II* and *Rocky Mountain III*.

## CONCLUSION

Wherefore, on the basis of the foregoing, Plaintiffs respectfully assert that there is good cause to not stay their case pending disposition of the two related cases.

Respectfully submitted on this 16th day of November, 2023.

/s/ Kristine L. Brown
***Kristine L. Brown***
8700 E. Jefferson Ave. #370953
Denver, CO 80237
Telephone: 720-285-9552
E-mail: kristiburtonbrown@gmail.com

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November 2023, I served a true and complete copy of the forgoing PLAINTIFFS' SHOWING OF CAUSE upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General

GRANT T. SULLIVAN
Assistant Solicitor General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187 / 6349
mike.kotlarczyk@coag.gov
grant.sullivan@coag.gov

*Attorneys for Defendant Jared Polis, Colorado Governor, in his official capacity*

/s/ Kristine L. Brown